409 P.2d 393

Ronald J. HAMILTON and Naomi M. Hamilton, husband and wife, Plaintiffs and Cross-Defendants-Appellants,

v.

VILLAGE OF McCALL, an Incorporated Village of the State of Idaho, Defendant and Cross-Plaintiff-Respondent.

No. 9614.

Supreme Court of Idaho.

Dec. 31, 1965.

Elam, Burke, Jeppesen & Evans, Boise, for appellants.

· Robert Remaklus, Cascade, and William R. Padgett, Boise, for respondent.

KNUDSON, Justice.

This action was commenced by plaintiffs-appellants on October 19, 1962, to quiet title to certain real property situate in Valley County, Idaho. Defendant-respondent, Village of McCall, filed its answer and cross-complaint seeking to quiet title to the

same property alleging adverse possession and use as the basis of its title. From a judgment in favor of defendant this appeal is taken.

The disputed property is described in paragraph 11 of the trial court's findings of fact, as follows:

"Commencing at the Southwest Corner of Lot 3 of Block 9 of Davis Beach Tracts, as platted and as appears on Amended Map of Davis Beach Tracts, in Section 4, Township 18 North, Range 3 East of the Boise Meridian, in Valley County, Idaho; thence South 50 feet; thence East 550 feet; thence North 65 feet; thence South 88° 23' West 275.91 feet; thence South 59° 17' West 76.74 feet; thence South 82° 45' West 40.45 feet; thence North 37.1 feet; thence West 193.1 feet to the point of beginning."

The following is a sketch which is here inserted solely for the purpose of graphically showing the relative location and identity of the disputed area. This sketch is not drawn to scale.

Prior to 1939 the disputed area together with the adjacent property lying both north and south thereof was owned by the Dewey-Davis Estate, Inc. (hereinafter referred to as "Estate"). In 1937, during the Estate's ownership of the area, the street known

and referred to as "3rd Street," lying immediately south of Lot 9 of Davis Beach Tracts, which had never been laid out or constructed on the ground, was vacated. Since the Estate at that time owned the property on both sides of said street the Estate became the owner of the area vacated.

During 1939 McCall Chamber of Commerce acquired title from said Estate to the real property lying immediately south of said vacated 3rd Street, upon which area a private golf course had been constructed by the Estate. During the same year the McCall Chamber of Commerce conveyed the golf course property to defendant Village. Since acquiring this property the defendant has maintained and operated it as the McCall Golf Course.

Plaintiffs alleged that on or about July 6, 1959, they entered into a contract with the Estate under the terms of which the Estate agreed to convey to plaintiffs a parcel of real estate which encompasses the area here in dispute. The deed conveying such parcel to plaintiffs was admitted herein as Plaintiffs' Exhibit 2.

Under the conveyance by the Estate to McCall Chamber of Commerce the property conveyed is bounded on the north by what had constituted the south line of 3rd Street, and under the conveyance by Estate to plaintiffs the property conveyed is bounded on the south by the same line.

Defendant contends that it acquired said disputed real property by having adversely held and possessed the same under a claim of title not founded upon a written instrument for a period of five years continuously, pursuant to the provisions of I.C. § 5–210. Plaintiffs rely upon their record title and contend that defendant's possession or holding, if any, of the disputed property was without color of right and not openly, notoriously or hostile and was subordinate to plaintiffs' title.

Considerable conflicting evidence was introduced relating to defendant's occupation and use of the easterly portion of the disputed area as a conventional part of the golf course and the remaining westerly portion as a parking lot for the patrons of the golf course. The trial court found that the disputed area was unfenced except that there is a wire fence on the north of the easterly portion thereof, which fence was originally constructed to keep cattle off the golf course. The court also found "that there is no evidence in this action as to any agreed boundary line, other than is specified in the deed by which McCall Chamber of Commerce acquired ownership, and the deed by which McCall Chamber of Commerce disposed, of that real property immediately South of said vacated 3rd Street, as aforesaid."

One of plaintiffs' principal contentions is that by reason of the assessment, levy, col-

lection and receipt of taxes on the disputed property by the defendant Village of Mc-Call, the elements of hostility and color or claim of right, necessary to the acquisition of title by adverse possession are lacking, and that defendant is estopped to claim such property because of its actions relating to the levy and collection of ad valorem taxes thereon.

During the trial plaintiffs introduced evidence relating to the levy, assessment and payment of municipal taxes on the disputed property for the year 1958 from which evidence the trial court found:

"22) That, in the year 1958, said Village of McCall fixed and certified the amount of ad valorem tax levy which was to be applied to all real property subject to ad valorem taxes of said Village of McCall for the year 1958;"

Following plaintiffs' introduction of the evidence relating to the levy, assessment and payment of taxes on the disputed property for the year 1958 the parties entered into a stipulation in open court, the pertinent portion of which is as follows:

"* * * it is hereby stipulated between parties to this action by and through their attorneys of record, that the Plaintiff's evidence regarding levy, assessment, and payment of taxes for the years 1941, 1946, 1951, and 1955 and all subsequent years, is stipulated

to be identical with proof submitted for the year 1958, except for the differing amounts of taxes."

In addition to the foregoing the court made the following quoted pertinent findings regarding the levy, assessment and payment of taxes on the disputed property, to-wit:

"23) That, solely because said Dewey-Davis Estate was then (and had been at all times from prior to 1939 through 1958) the record owner of the aforesaid real property title to which is in dispute in this action, all Valley County, Idaho, Officials concerned with the levy, assessment and collection of ad valorem taxes treated said disputed real property as being subject to ad valorem taxes of said Village of McCall (said disputed real property being located within the territorial limits of said Village of McCall) and, as a consequence, collected (without any specification of any improvements) ad valorem taxes (for 1958) for said Village of McCall from said Dewey-Davis Estate, the same being remitted to, and accepted by, said Village of McCall;

"24) That, for the same reason, and in like manner, ad valorem taxes of said Village of McCall were similarly collected, remitted and accepted from the private record owners of said dis-

puted real property for and in the years 1941, 1946, 1951 and 1955 though in differing amounts;"

It should be noted that the last above quoted finding does not refer to the years subsequent to 1955; however the parties stipulated that plaintiffs' proof applied to "1955 and all subsequent years" and the parties are bound accordingly.

In this case defendant is seeking to have quieted in it title to real estate, the legal title to which is in plaintiffs. Defendant's claimed title rests upon adverse possession, and it claims such possession is sufficient to meet the requirements of I.C. § 5–210, which provides as follows:

> "For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied in the following cases only:

> "1. Where it has been protected by a substantial inclosure.

> "2. Where it has been usually cultivated or improved.

> "Provided, however, that in no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons,

their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law."

■ This court has held that under this section of our law one cannot obtain title by adverse possession unless it shall be shown that the land was being openly and notoriously occupied and claimed with a hostile intent for the statutory period. In Pleasants v. Henry, 36 Idaho 728, 213 P. 565, this court quoted with approval the following language:

> " 'Hence, an open and notorious occupation with hostile intent is a necessary constituent of an adverse possession. Neither a hostile intent without such occupation, nor such occupation without hostile intent, is sufficient.' Unger v. Mooney, 63 Cal. 586, 49 Am. Rep. 100."

See also Checketts v. Thompson, 65 Idaho 715, 152 P.2d 585. Accordingly we hold that adverse possession, to create title, must be based on the existence of physical facts which openly evince a purpose to hold dominion over the land in hostility to the title of the real owner and such as will give notice of the hostile intent.

■■ The burden of showing all of the essential elements of adverse possession is upon the parties seeking title thereunder.

Plaintiffs contend that defendant has failed to establish such title since the evidence in respect to the payment of taxes by the record owner and receipt thereof by the adverse possessor negates any claim or intention by the latter inconsistent with the title of the record owner. There is merit to this contention.

A like contention was presented to this court in Hesse v. Strode, 10 Idaho 250, 77 P. 634, wherein the stipulated facts disclosed that the municipality involved, Boise City, had built a fire-engine house in such fashion that it encroached upon the adjoining land of a private owner; that the City levied taxes for city purposes upon the privately owned parcel which were paid by the respondents and their predecessors in interest. The court therein stated that

"This would indicate that the city was not holding said tract of ground adversely to the respondents, but recognized their title thereto by levying such taxes and charges against it. The city has thus from year to year treated this property as belonging to the respondents, accepted their money for the taxes so levied on the theory that the property belonged to them. And the city, by those acts, is estopped from denying that said property was legally assessed, and that it was not, in fact, subject to taxation, and did not belong to the respondents."

Respondent argues that at the time the Hesse case was decided Boise City was a charter city and was specifically empowered by its own charter to levy, assess and collect its own taxes; that the Village of McCall is not a charter city and that this distinction in fact renders the decision in the Hesse case inapplicable. In connection with this contention it should be noted that section 6 of Article VII of the Constitution of the State of Idaho provides:

"The legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may by law invest in the corporate authorities thereof, respectively, the power to assess and collect taxes for all purposes of such corporation."

This section is an inhibition on the legislature from imposing taxes for the purpose of any county, city, town or other municipality and gives the legislature power to vest in the corporate authorities of such municipalities the power to assess and collect taxes for all purposes of such corporations. Fenton v. Board of County Commissioners, 20 Idaho 392, 119 P. 41.

It is further contended by defendant that under the existing laws of this state the duties of assessing, levying and collecting municipal taxes have been transferred from the municipality to the county officers and for that reason the Village of McCall had

no control over the levying, assessing or collecting of its real property taxes. This contention is disposed of by the decision of this court in Bagley v. Gilbert, 63 Idaho 494, 122 P.2d 227, wherein it is stated that the county officials in collecting the city taxes merely act as agents of the city in the performance of the duties required of them.

We recognize that the court in the Bagley case was speaking of the particular transfer of duties in the assessing and collecting of taxes from Boise City to the Ada County authorities. However we hold that the relationship of agency announced therein equally applies to the method of assessing and collecting taxes by the counties for the various municipalities throughout the state.

The court in the Bagley case referred to the general act of the legislature in 1901 transferring the duties of assessing and collecting taxes from the municipalities to the counties for said municipalities (1901 S.L., p. 233). This has been amended and is now embraced in I.C. § 63–918, which reads in part:

"All taxes of every city, town, village, school district or other district or municipality, levied according to law and certified in accordance with the provisions of this act, shall be collected and paid into the county treasury and apportioned to such city, town, village,

school district or other district or municipality: provided, that one and one-half per cent of all taxes collected and paid into the county treasury for every incorporated city, town or village and every other district or municipality having a treasurer whose duty it is to receive, keep and disburse all moneys belonging to such incorporated city, town, village, or other district or municipality, shall be apportioned to the county current expense fund, which apportionment shall be in full for all services of all county officers in the levy, computation and collection of such taxes."

It is recognized that some courts have expressed a view different than that stated in the Hesse case. However, we believe that such rule is adhered to in a majority of jurisdictions, some of which are: Levering v. City of Tarpon Springs, 92 So.2d 638 (Fla., 1957); Inhabitants of Town of Island Falls v. A.K.R. Inc., 157 Me. 147, 170 A.2d 395 (1961); Illinois Cent. R. Co. v. City of Bloomington, 167 Ill. 9, 47 N.E. 318 (1897); Stengl v. Starr Bros., 370 Ill. 118, 18 N.E.2d 179 (1938); Falter v. Packard, 219 Ill. 356, 76 N.E. 495 (1905); and Parrott v. Stewart, 65 Or. 254, 132 P. 523 (1913).

We are not aware of any method by which a governmental agency can recognize private ownership more emphatically and

conclusively than by assessing and collecting ad valorem taxes. In view of these circumstances we are necessarily led to the conclusion that the Village of McCall has not been and is not now in a position to claim open, notorious, hostile, and adverse user for such period of time as is necessary to acquire title to the property in dispute by adverse possession. Judgment reversed with instruction to enter judgment in favor of plaintiffs in accordance with the views herein expressed.

Costs to appellants.

McQUADE, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.