824 P.2d 115

**Edward L. CLUFF, Plaintiff–Appellant,**

v.

**BONNER COUNTY, a political subdivision of the State of Idaho, Defendant–Respondent,**

**and**

**Leroy Maring, and all unknown heirs, successors or assigns of Leroy Maring, and all unknown claimants, their heirs, successors and assigns to the following described real property in Bonner County, Idaho, to-wit: Government Lot 6 in section 36, Township 55 North, Range 2 East, Boise Meridian, Bonner County, Idaho, Defendants.**

No. 18923.

Supreme Court of Idaho,

Boise, October 1991 Term.

Jan. 15, 1992.

Everett D. Hofmeister, Coeur d'Alene, for plaintiff-appellant.

Steven C. Verby, Sandpoint, for defendant-respondent.

JOHNSON, Justice.

 This is an adverse possession case. The primary issue presented is whether there is a genuine issue of material fact concerning the improvement of the property by the adverse claimant. We conclude there is a genuine issue of material fact and vacate the trial court's summary judgment dismissing the adverse claimant's quiet title action. We also restate principles concerning adverse possession: (1) a

person claiming title not founded upon a written instrument is not required to prove an oral claim of title, (2) continuous occupation of property for five years creates a presumption that the possession has been adverse and under a claim of right, and (3) the requirement of occupation with hostile intent merely refers to occupation without permission by the owner of the property.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS.

In 1922, the United States government conveyed 141.97 acres of land (the land) in Bonner County (the County) to Leroy Maring by a patent (the patent) that was recorded in the records of the County. The legal description in the patent included property designated as Lot 6. In 1923, the assessor of the County (the assessor) began assessing real property taxes on the land, except that the legal description used by the assessor did not mention Lot 6. After 1931, Maring did not pay the real property taxes assessed by the County. In 1940, the County received a tax deed to the land, not including Lot 6. The assessor listed the United States government as the owner of Lot 6.

In 1984, a United States Forest Service employee informed the assessor that the United States did not own Lot 6. The assessor then recorded the patent again and began assessing real property taxes on Lot 6 to Maring. Maring did not pay the taxes.

Edward L. Cluff, an employee of the assessor, learned that no one was paying the taxes on Lot 6 and became interested in acquiring Lot 6, which is isolated timberland with a creek running through it. Cluff visited Lot 6 several times during the summer of 1984. While he was on Lot 6, Cluff moved a tree, altered the course of the creek, and, as he said later in his deposition, did "lots of little things." During the next five years Cluff made occasional hunting, fishing, and overnight camping trips to Lot 6. Cluff posted "Private Property" signs at all reasonable access points

to Lot 6. He informed the neighboring land owner of his claim to Lot 6 and asked to be contacted if anyone trespassed on Lot 6. He contacted the United States Forest Service to obtain an easement for access to Lot 6. He contacted the Idaho Department of Fish and Game concerning a riparian improvement program for Lot 6. He completed some and initiated other erosion control projects on Lot 6. He developed a timber management program for Lot 6 and cultivated the timber stand by thinning and cleanup operations. Cluff paid the real property taxes assessed on Lot 6 for the years 1984 through 1988. Cluff also tried to locate Maring or Maring's heirs to arrange a possible purchase of Lot 6.

In 1989, Cluff filed an action to quiet title to Lot 6, naming as defendants Maring, Maring's heirs, successors or assigns, and all unknown claimants to Lot 6. Cluff served Maring with process by publication. Maring did not appear in the action. The County filed an answer to the complaint admitting that Cluff had paid taxes on Lot 6, but alleging that Cluff had no valid interest in Lot 6, and that he had misused his position at the assessor's office to have tax notices for Lot 6 sent to him.

Cluff moved to dismiss the County's answer or to have it stricken, to have a default judgment entered against the County, or for summary judgment in his favor. The County executed a correction to the 1940 tax deed. The corrected tax deed conveyed Lot 6 to the County. The County then moved for summary judgment.

The trial court denied Cluff's motions and granted the County's motion for summary judgment dismissing Cluff's quiet title action. Cluff appealed.

## II.

## THE COUNTY WAS PROPERLY DESIGNATED AS A DEFENDANT.

■ Cluff asserts that the trial court should not have allowed the County to appear as a defendant but should have required the County to intervene pursuant to I.R.C.P. 24(a) or (b). We disagree.

Cluff named as defendants in his quiet title action not only Maring and Maring's heirs, successors, and assigns, but also "all unknown claimants, their heirs, successors and assigns." This designation of unknown claimants is authorized by I.R.C.P. 10(a)(5) and 17(d). The County alleged that its ownership of Lot 6 is evidenced by the corrected tax deed. The County's claim of ownership under the corrected tax deed gave the County sufficient status to appear as a defendant in the action.

## III.

## THE TRIAL COURT SHOULD NOT HAVE GRANTED SUMMARY JUDGMENT DISMISSING CLUFF'S QUIET TITLE ACTION.

■ Cluff asserts that the trial court should not have granted summary judgment dismissing his action. We agree.

In granting summary judgment against Cluff, the trial court said:

By his own deposition testimony Cluff admitted that since 1984 he had camped, hunted, and fished on the property on several occasions and had examined the lay of the land, but he had not planted any crops on the land nor placed any structures on the property, and he had not fenced the land. As such, Cluff has failed to establish that he was in possession of the claimed property, either in that the property was cultivated or improved or that it was protected by a substantial enclosure. Cluff further admitted that he himself was not living on the land. In fact, Cluff's claim of right to the property is basically that he has paid the taxes since 1984.

This rationale construes too narrowly the usual improvement provision of I.C. § 5–210, which provides:

**5–210. Oral claim—Possession defined—Payment of taxes.**—For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied in the following cases only:

1. Where it has been protected by a substantial inclosure.
2. Where it has been usually cultivated or improved.

Provided, however, that in no case shall adverse possession be considered established under the provisions of any sections of this code unless it shall be shown that the land has been occupied and claimed for the period of five (5) years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law.

Many years ago, in discussing the portion of this statute that refers to the usual improvement of land, this Court said:

[T]he improvements referred to ... must necessarily vary according to the character of the land, its location, the uses to which it is usually put and all the circumstances bearing on that question. That there must be the usual improvement when improvement is relied upon, is a matter of law. What is such an improvement is a matter of fact. The actual occupancy of land need only be such continuous, exclusive and hostile use as ... under all of the circumstances, is sufficient to notify the true owner, *actually or constructively*, of the invasion of [the owner's] rights and the adverse intent to claim the same by the occupant.

*Trask v. Success Mining Co.*, 28 Idaho 483, 490, 155 P. 288, 290 (1916) (emphasis in original).

Applying this standard, the assertions of fact contained in Cluff's deposition and affidavit were sufficient to create a genuine issue of material fact whether Cluff improved Lot 6. The trial court should not have granted summary judgment against Cluff on this ground. I.R.C.P. 56(c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

The trial court also premised its summary judgment on the fact that Cluff had neither a claim of title based upon a written instrument pursuant to I.C. §§ 5–207 and 5–208, nor an oral claim of title pursuant to I.C. §§ 5–209 and 5–210. The trial court was correct that Cluff had no claim based upon a written instrument. The trial court, however, misconstrued the law of adverse possession in this state concerning possession not founded on a written instrument.

It is true that the descriptive title of I.C. § 5–209 states: "Possession under oral claim of title." The descriptive title of I.C. § 5–210 states: "Oral claim—Possession defined—Payment of taxes." Similar descriptive titles were added to the statutes when the earlier statutes were compiled in 1919. *See* C.S. §§ 6602–6603. These descriptive titles do not, however, make an "oral claim of title" an element of proof of adverse possession where the claim is not based upon a written instrument. The statutes only differentiate those cases in which there is a written claim of title and those where there is no written claim. In this context, the descriptive titles do not change the provisions of the statutes. *Cf. Walker v. Nationwide Fin. Corp. of Idaho*, 102 Idaho 266, 268, 629 P.2d 662, 664 (1981) ("where the meaning of a statute is unclear, resort may be had to the statutory heading as an aid in ascertaining legislative intent").

This Court has never required a person whose adverse possession claim is not based upon a written instrument to prove an oral claim of title. In *White v. Boydstun*, 91 Idaho 615, 621, 428 P.2d 747, 753 (1967), the Court said:

A claimant who seeks to establish ownership by adverse possession without an instrument of title must show that during a minimum period of five years [the claimant] has occupied the claimed land under an asserted right, manifesting this claim and occupation by causing the land to be "protected by a substantial enclosure" or "usually cultivated or improved." I.C. § 5–210. Continuous occupation for five years creates a presumption that the possession has been adverse and under a claim of right, *Sinnett v. Werelus*, 83 Idaho 514, 365 P.2d 952 (1961).

(Footnote omitted).

This construction of the effect of continuous occupation for five years is an echo from earlier decisions of this Court. *E.g., Hogan v. Blakney*, 73 Idaho 274, 281, 251 P.2d 209, 214 (1952) ("Uninterrupted and continuous use for the prescriptive period raises the presumption that such use was adverse and under claim of right."); *Taylor v. O'Connell*, 50 Idaho 259, 261, 295 P. 247, 247 (1931) ("The evidence is without conflict that the ditch was used by appellant uninterruptedly and continuously for more than the prescriptive period, which raises a presumption that such use was adverse and under claim of right.").

That this Court has rejected the requirement that there must be evidence of a good faith claim of right apart from continuous possession for five years is borne out by the opinion of Justice Keeton dissenting to the decision of his four colleagues in *Hogan*. In his dissent Justice Keeton expressed his view of this question:

The respondent did not enter on the tract of land or any part of it under any claim of right, and recognized the fact that someone else owned it. He repeatedly made inquiries to learn who owned it and wanted to negotiate a deal with the owner for the purchase, which convinces me that he did not claim to be the owner.

. . . .

It is my view that respondent was a squatter. A squatter is a person entering upon land not claiming in good faith the right to do so by virtue of any title of [the squatter's] own or by virtue of any agreement with another whom [the squatter] believes to own the title. In other words, the respondent was an intruder, and it would make no difference how long [the squatter] occupied the land, [the squatter] could secure no right for the reason that [the squatter] made no adverse claim against the true owner.

[The squatter's] possession is therefore not adverse.

A mere naked possession, without a claim of right, never ripens into a good title.

One cannot obtain title to real estate by simply constructing a building on someone else's land.

73 Idaho at 283, 251 P.2d at 215 (Keeton, J. dissenting; citations omitted).

In light of the holding in *Hogan* that uninterrupted and continuous use for five years raises the presumption that the use was adverse and under claim of right, it is clear the Court rejected the view of Justice Keeton quoted above. Justice Keeton's view is the one asserted by the County and adopted by the trial court in this case. The trial court emphasized this view in its decision granting summary judgment against Cluff: "The possession must be actual, open, adverse, exclusive, and uninterrupted, as well as inconsistent with the existence of title in another, *and under a claim of right or title.*" (Emphasis in original.)

The effect of the presumption created by continuous possession for five years is to shift the burden to a party opposing the claim of adverse possession to produce evidence that the possession was with the consent of the owner. In *Taylor,* after noting the existence of the presumption, the Court ruled that there was "not sufficient evidence of parol license to overcome this presumption." 50 Idaho at 261, 295 P. at 247; *see also Stecklein v. Montgomery,* 98 Idaho 671, 674, 570 P.2d 1359, 1362 (1977) ("Absent other evidence of permission, the presumption operates to establish adverseness."); *Checketts v. Thompson,* 65 Idaho 715, 721, 152 P.2d 585, 587 (1944) ("as the evidence showed such use to have been open, continuous, and unmolested . . ., the burden was upon appellants to show that the use was permissive").

Also, Cluff's attempts to locate Maring or his heirs does not impair the adverseness of his possession. *See Calkins v. Kousouros,* 72 Idaho 150, 156–57, 237 P.2d 1053, 1057–58 (1951) ("Conceding appellants sought to purchase any adverse interest in what respondents claim . . ., same

was not an acknowledgement of respondents' superior title and did not void or interfere with the continuity of appellants' claim of title by adverse possession. . . . A party may very well deny the validity of an adverse claim or title, and yet choose to buy his peace at a small price, rather than be at great expense and annoyance in litigating it.").

The trial court also misinterpreted the significance of certain language in *Hogan* concerning the hostility necessary to establish adverse possession. The trial court quoted the following passage from the decision in *Hogan:* "Neither a hostile intent without such occupation, nor such occupation without hostile intent, is sufficient." 73 Idaho at 281, 251 P.2d at 214 (quoting from *Pleasants v. Henry,* 36 Idaho 728, 736, 213 P. 565, 567 (1923), which in turn had quoted from *Unger v. Mooney,* 63 Cal. 586, 592 (1883)).

The true meaning of this passage is disclosed in *Berg v. Fairman,* 107 Idaho 441, 443, 690 P.2d 896, 898 (1984):

[T]he burden of claimant [is] to show possession of disputed property was hostile to that of the real owner *and not with the permission of the real owner* since "occupation without hostile intent" does not constitute adverse possession. *Hamilton v. Village of Mc Call,* [90 Idaho 253, 258, 409 P.2d 393, 396 (1965)]; *Pleasants v. Henry,* 36 Idaho 728, 213 P. 565 (1923).

(Emphasis added).

In *Hamilton,* the Court held that adverse possession

must be based on the existence of physical facts which openly evince a purpose to hold dominion over the land in hostility to the title of the real owner and such as will give notice of the hostile intent.

90 Idaho at 258, 409 P.2d at 396.

In *Pleasants,* the prelude to the Court's reference to the hostility requirement reveals the significance of the passage quoted in *Hogan:*

[C]ounsel seems to argue that actual notice to the true owner that another claims adversely to him, if continued for

a period of five years, dispenses with the necessity of the requirement of actual and continued occupation and possession to constitute title by adverse possession.

36 Idaho at 735, 213 P. at 567.

After quoting the passage, " 'Neither a hostile intent without such occupation, nor such occupation without hostile intent, is sufficient,' " the Court in *Pleasants* then pointed out the significance of the language:

The actual and continuous occupation and possession of real property is necessary to acquire title by adverse possession. Possession is one of the indispensable elements in adverse possession; and the fact that the true owner is aware of the hostile claim does not dispense with the necessity of actual continuous occupation and possession for the requisite period.

*Id.* at 736, 213 P. at 567.

Hostile intent in this context is only a short-hand way of saying that the claimant possessed the property without the permission of the owner.

## IV.

### CONCLUSION.

We vacate the summary judgment against Cluff and remand the case to the trial court for further proceedings consistent with this opinion. We note for the trial court that we have not ruled that Cluff has established sufficient usual improvement or the other elements of adverse possession, but only that summary judgment should not have been granted on the basis of the record presented to the trial court.

We award costs, but not attorney fees, to Cluff on appeal.

BAKES, C.J., BOYLE and McDEVITT, JJ., and ROWETT, J., Pro Tem., concur.