837 P.2d 805

**EAST LIZARD BUTTE WATER CORPO-RATION, an Idaho Non-profit Corpora-tion, Plaintiff–Respondent,**

v.

**William E. HOWELL and Mary J. How-ell, the Statutory Trustees of Contract Mortgage Corp., a defunct Idaho Cor-poration, Defendants–Appellants.**

No. 19772.

Supreme Court of Idaho,
Boise, April 1992 Term.

Aug. 31, 1992.

William E. Howell, pro se.

Schiller & Schiller, Chartered, Nampa, for plaintiff-respondent. James A. Schiller, argued.

McDEVITT, Justice.

Defendants appeal from summary judgment in favor of the plaintiff. Plaintiff instituted this action seeking to quiet title to three "well lots" in Hagen's Mobile Estates Subdivision in Canyon County. The plaintiff sought title to the lots in question on the theory of adverse possession. The defendants urged that the plaintiff's use of the lots was permissive and title should be quieted in favor of the defendants. The trial court granted summary judgment in favor of the plaintiff and entered a decree quieting title in favor of the plaintiff.

From this decree, defendants appealed and the case was assigned to the Court of Appeals. The Court of Appeals vacated and remanded. 122 Idaho 686, 837 P.2d 812. The plaintiff then petitioned this Court for review of the decision of the Court of Appeals and review was granted. We reverse the decision of the district court and remand to the district court for further proceedings consistent herewith.

## FACTS

The following facts are undisputed. In 1971, Mr. and Mrs. John W. Hagen ("the Hagens") formed "Hagen's Mobile Estates Subdivision." In 1972, they formed "Hagen's Mobile Estates Subdivision No. 2." Plats of both subdivisions were filed with Canyon County. Protective covenants were also filed with Canyon County. Lot 6 of Block 2 and Lot A of Block 7, of Hagen's Mobile Estates Subdivision No. 1, and Lot A of Block 8 of Hagen's Mobile Estates Subdivision No. 2 were then used as "well lots" to furnish water to the subdivision. In 1976, the electrical power to the water system was shut off for lack of payment. To alleviate the situation, the owners of the lots within the subdivision formed East Lizard Butte Water Corporation ("ELBWC") to supply water to the subdivision. ELBWC was formed as a nonprofit corporation and the appropriate documentation was filed with the Secretary of State.

Since 1976, ELBWC has installed new pumps, new well houses, new insulation in the well houses, and made other improvements to the well lots. ELBWC has also paid the irrigation taxes assessed on the three well lots since 1976. No property taxes have been assessed against the property because of their use as well lots.

The Hagens transferred the remaining unsold lots in both subdivisions to Contract Mortgage Corporation. In 1978, Contract Mortgage Corporation forfeited its charter. The defendants, William and Mary Howell, were the last known directors of Contract Mortgage Corporation and therefore, pursuant to Idaho law, are the statutory trustees of the corporation.

In the late 1980's, the drinking water became contaminated and unfit for human consumption. This required the residents of the subdivision to bring in their own drinking water. ELBWC has been working with the Farmers Home Administration ("FHA") on a loan/grant package to drill new wells and to replace the water system. In order to obtain the loan/grant, FHA requires that ELBWC have legal title to the well lots. For this purpose, ELBWC filed this action to quiet title to the well lots.

At this point, the parties are in dispute as to the facts. In its complaint, ELBWC claims that its possession of the lots has been "actual, open, visible, notorious, continuous and hostile to the defendants." ELBWC further claims possession under oral and/or written claim of title.

To support its claim to the three well lots, ELBWC filed an affidavit of Earl Binger, President of ELBWC. ELBWC claims that the plats show that the three well lots were designated as such and thus were dedicated for public use. ELBWC also claims that the protective covenants indicate that the well lots were to be transferred to a nonprofit corporation. ELBWC further claims that the defendant and its predecessors represented to prospective purchasers that the well lots and well equipment would be transferred to a nonprofit corporation.

The defendants countered ELBWC's allegations by filing the affidavit of William E. Howell. Mr. Howell asserts that the power was shut off because no one would pay their water bills. He then claims that after the power to the wells was shut off, he attended a meeting several lot owners in the subdivision. In this meeting, Howell asserts that he informed the lot owners that they could operate the water system "until something better could be worked out." Thus, the defendants assert that ELBWC's use of the well lots was permissive and not under a claim of right.

On appeal, we must address the following two issues: (1) did the trial court err in granting summary judgment to the plain-

tiff; and, (2) did the trial court err in awarding attorney fees and costs.

## I. THE MOTION FOR SUMMARY JUDGMENT

*Standard of Review*

■ In an appeal from a motion for summary judgment, this Court's standard of review is the same as the standard used by the trial court in passing upon a motion for summary judgment. *McDonald v. Paine*, 119 Idaho 725, 810 P.2d 259 (1991); *Meridian Bowling Lanes v. Meridian Athletic*, 105 Idaho 509, 670 P.2d 1294 (1983). All facts and inferences from the record will be viewed in favor of the nonmoving party to determine whether the motion should be granted. *Treasure Valley Bank v. Butcher*, 117 Idaho 974, 793 P.2d 206 (1990); *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986); *Farmers Ins. Co. of Idaho v. Brown*, 97 Idaho 380, 544 P.2d 1150 (1976). The burden of proving the absence of material facts is upon the moving party. *Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 452 P.2d 362 (1969). However, the adverse party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(e); *Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1987). In addition, the affidavits submitted in support of or against the motion "shall set forth facts as would be admissible in evidence." I.R.C.P. 56(e); *Evans v. Twin Falls County*, 118 Idaho 210, 796 P.2d 87 (1990); *Gardner v. Evans*, 110 Idaho 925, 719 P.2d 1185 (1986). A mere scintilla of evidence is insufficient to create a material issue of fact. *Id.* Judgment shall be rendered if the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue of material fact. I.R.C.P. 56(c); *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982).

*Adverse Possession*

■ First, ELBWC asserts its claim to the well lots under adverse possession pur-

suant to a written claim and/or an oral claim of right. I.C. §§ 5–207 and 5–208. ELBWC asserts its written claim based upon the subdivision plats and protective covenants filed with Canyon County. Section 6 of the Protective Covenants states:

Water is to be supplied through a system operated by a nonprofit cooperative water association, which shall maintain and operate various wells in the subdivision. Each lot owner shall receive a certificate for shares in such association. No development shall disturb present water courses conveying water to adjacent farm lands.

Each lot owner shall install and maintain a septic tank or other sewer system as required by the health laws of the State of Idaho, and Canyon County Zoning regulations. Three acres of land have been dedicated by grantors for use as a central sewage system.

While the protective covenants do provide for a nonprofit corporation to maintain and operate the water system, the covenants are silent as to the ownership of the well lots. Likewise, the recorded subdivision plats fail to designate the lots involved as "well lots." There is no indication that the three lots involved were to be treated any differently than the rest of the lots that were to be sold as residential lots. The plats also do not indicate that the well lots were dedicated for public use. The plats are silent as to the proposed use of the three lots. Neither of these documents is a sufficient written instrument upon which a written claim to adverse possession can be based.

■ ELBWC also claims title to the well lots pursuant to I.C. §§ 5–209 and 5–210, adverse possession based upon an oral claim to title. In *Cluff v. Bonner County*, 121 Idaho 184, 824 P.2d 115 (1992), this Court restated the principles concerning adverse possession under an oral claim or right. These principles are: "(1) a person claiming title not founded upon a written instrument is not required to prove an oral claim of title, (2) continuous occupation of property for five years creates a presumption that the possession has been adverse

and under a claim of right, and (3) the requirement of occupation with hostile intent merely refers to occupation without permission by the owner of the property." *Cluff,* 121 Idaho at 184–85, 824 P.2d at 115–16. The burden of proving adverse possession is upon the party seeking title thereunder. *Berg v. Fairman,* 107 Idaho 441, 690 P.2d 896 (1984). Further, the claimant must prove each element of adverse possession by clear and convincing evidence. *Loomis v. Union Pacific Railroad Co.,* 97 Idaho 341, 544 P.2d 299 (1975).

In support of ELBWC's claim of adverse possession, Mr. Binger stated in his affidavit that:

> [S]ince the date of incorporation, this corporation has been operating the wells on the three lots in question in this lawsuit. That the plaintiff corporation has done the following things on said lots: Put in new pumps, new well houses, new tanks, new insulation in the well houses, a new outside spigot on one well; and has mowed the weeds off of all of these lots. That the plaintiff corporation has not had to pay the county taxes on these lots because none are assessed since they are well lots. However, the plaintiff corporation has paid all of the irrigation taxes on said well lots since 1976. That the said irrigation taxes were the only taxes assessed against said property.
>
> That since 1976, the defendants, as statutory trustees of said defendant corporation, have not been to the subdivision or done any work at all on said well lots. That the plaintiff's possession of said three well lots has been open, notorious, continuous and uninterrupted under claim of ownership for a continuous period of more than five years.

While Mr. Binger's affidavit demonstrates that the plaintiff has occupied the well lots for a period exceeding the necessary 5 years, the affidavit fails to rebut Mr. Howell's assertion that the possession was by permission. Mr. Binger's assertion that the possession was "hostile" is merely gratuitous; the affidavit contains no facts to support this declaration.

In his affidavit, Mr. Howell stated:

> That the protective covenants and regulations of Hagen's Mobile Estates Subdivision No.'s 1 and 2 do provide that water is to be supplied through a system *operated* by a non-profit cooperative water association which shall *maintain* and *operate* various wells in the subdivision. They do not, however, provide that the wells and well lots will be *owned* by said non-profit association.
>
> Further, they do not provide that the owner of said wells and well lots will be a non-profit association.

> \* \* \* \* \* \*

> CMC [Contact Mortgage Corporation] entered into an agreement with a Mr. Vaughn and some other lot owners in the subdivision whereby they would operate the wells and collect from the users until something better could be worked out.
>
> That I, William Howell, personally attended meetings in Mr. Vaugn's backyard with several neighbors, for the express purpose of setting up a water users association that would oversee the water system.
>
> That my position was then, and still is, and it was understood by all, that eventually the water system would have to be paid for by the users.

At the oral argument, Mr. Howell reasserted his position that ELBWC's use of the well lots was permissive.

A significant portion of the statements contained in Mr. Howell's affidavit lack sufficient foundation to be admissible as evidence at trial. However, plaintiff failed to object as to the admissibility of the statements contained in the affidavit. Failure to object to the affidavit with some specificity for the grounds of the objection precludes this Court from considering the error. *Workman Family Partnership v. City of Twin Falls,* 104 Idaho 32, 655 P.2d 926 (1982); *Hoppe v. McDonald,* 103 Idaho 33, 644 P.2d 355 (1982).

The objection to the affidavit was based upon its timeliness. The court minutes of the hearing on plaintiff's motion for summary judgment indicate that:

Mr. Schiller objected to defendant's Affidavit in Opposition to the Motion for Summary Judgment which was filed today, and advised the court that it was untimely.

The trial court accepted and considered Mr. Howell's affidavit and determined that there was no material issue of fact.

The plaintiff's use of the well lots could be consistent with use by permission. In addition, without any facts supporting the necessary element of possession without permission, the plaintiff failed in its burden of proving adverse possession under an oral claim of right. The trial court erred in granting summary judgment for the plaintiff.

ELBWC also asserts that representations were made to prospective purchasers of lots within the subdivision that the well lots were to be transferred to a nonprofit corporation, thus invoking the rule of *Middlekauff v. Lake Cascade, Inc.*, 110 Idaho 909, 719 P.2d 1169 (1986). Reliance on *Middlekauff* is misplaced, as it is inapplicable to the facts of the case. The alleged misrepresentations are not identified as to (1) time, (2) place, or (3) person; such being so, they consist of mere conclusions.

## II. THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES AND COSTS

The trial court found that the Howells' defense of the plaintiff's claims were frivolous and without foundation in fact or in law and therefore awarded attorney fees and costs to the plaintiff. Having held that the Howells' defense created material issues of fact and summary judgment was therefore improper, the award of attorney fees and costs based upon the theory of a frivolous defense was also improper and must be reversed.

## III. CONCLUSION

We hold that summary judgment was improper in this case as there are genuine issues of material fact. Therefore, we reverse both the trial court's grant of summary judgment and the award of attorney fees and costs in favor of the plaintiff. We remand to the district court for proceedings consistent with this opinion.

Costs to appellants.

No attorney fees on appeal.

BAKES, C.J., BISTLINE, J., and TROUT, J. Pro Tem., concur.

JOHNSON, Justice, concurring specially and concurring in the result.

I concur specially in the portion of the Court's opinion reversing the summary judgment on the ground that ELBWC failed in its burden to establish adverse possession. As to this portion of the opinion, I write only to point out that, in my view, the trial court could have excluded the portion of Howell's affidavit that raises a genuine issue of material fact concerning the permissiveness of ELBWC's possession. As I see it, the trial court could have ruled that these portions of Howell's affidavit were not "admissible in evidence" as required by I.R.C.P. 56(e). Since the trial court did not exclude this portion of Howell's affidavit, I find it necessary to concur with the Court's disposition of the summary judgment. In the face of a proper objection or motion to strike by ELBWC, or exclusion by the trial court, the reference by Howell to an agreement by which lot owners would operate the wells should not have been considered.

I concur in the result of the portion of the Court's opinion rejecting ELBWC's assertion that representations were made to prospective purchasers of lots within the subdivision that the well lots were to be transferred to a nonprofit corporation, thus invoking the rule of *Middlekauff v. Lake Cascade, Inc.*, 110 Idaho 909, 719 P.2d 1169 (1986). As I read the record, ELBWC did not raise this issue before the trial court. While the trial court referred to *Middlekauff* in its decision, the reference was in relation to summary judgment on Howell's counterclaim, not on any claim by ELBWC.