**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 51291**

| | |
|---|---|
| MARK RADFORD, an individual,<br><br>  Plaintiff-Counterdefendant-<br>  Appellant,<br><br>and<br><br>HALLO PROPERTIES, LLC, an Idaho limited liability company,<br><br>  Plaintiff-Appellant,<br><br>v.<br><br>JAY VAN ORDEN, an individual; DEXTER VAN ORDEN, an individual;<br><br>  Defendants-Respondents,<br><br>and<br><br>STATE OF IDAHO, by and through STATE BOARD OF LAND COMMISSIONERS, and IDAHO DEPARTMENT OF LANDS,<br><br>  Defendants-Counterclaimants-<br>  Respondents. | Boise, May 2025 Term<br><br>Opinion Filed: July 1, 2025<br><br>Melanie Gagnepain, Clerk |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County, Michael J. Whyte, District Judge.

The partial judgment of the district court is <u>affirmed</u>.

Parsons Behle & Latimer, Idaho Falls, for Appellants Mark Radford and Hallo Properties, LLC. John E. Cutler argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent State of Idaho.

1

Hayden Marotz argued on behalf of Respondent State Board of Land Commissioners, and Jennifer J. Winters argued on behalf of Respondent Idaho Department of Lands.

_____

BRODY, Justice.

This appeal arises from a contract dispute between Mark Radford and the State Board of Land Commissioners and the Idaho Department of Lands ("IDL") (collectively, "the State") concerning the State's easement over Radford's property ("the Radford Property"). The State uses the easement to access and manage state endowment lands leased for grazing. Historically, the State and its lessees had permission to access the easement on the Radford Property by crossing through the Hallo Property, which is a parcel situated immediately south of the terminus of the easement. However, in 2020, Radford purchased the Hallo Property and revoked permission to use the Hallo Property to access the easement on the Radford Property. Citing an email received from the State, Radford took the position that once he had revoked permission to access the easement through the Hallo Property, the State had also determined the easement across the Radford Property was no longer needed. He subsequently filed suit against the State, claiming, in relevant part, the State breached the termination clause of the easement agreement, which requires the State to "furnish to [Radford] a statement . . . confirming termination" if it determines that "any segment or portion" of the easement "is no longer needed for the purpose granted[.]" Upon the State's motion for summary judgment, the district court determined that the termination clause gave the State sole and subjective power to determine whether the easement is necessary to the State and dismissed Radford's breach of contract claim because the State had made no such determination. Radford timely appealed. For the reasons discussed below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

While the record reflects a litigious and acrimonious history between the parties, the salient facts of this case are largely undisputed. The State owns and manages, through the Board of Land Commissioners, endowment land in Bingham County, Idaho ("State Property"). Mark Radford owns property, which is adjacent to, and partially surrounds, the State Property. In 2016, the State engaged in a reciprocal easement exchange with Shirley Thompson, the prior owner of the Radford Property. The State acquired an appurtenant roadway easement through the Radford Property, and Thompson acquired an access easement on State Property. The State's easement, known as Acquired Easement 800013 ("AE800013"), encompasses a historical two-track road that traverses

2

several parcels of rangeland owned by different private landowners and bisects the Radford Property in two places. Historically, the State and its lessees had permission to access the easement by crossing through the Hallo Property, which is situated immediately south of the terminus of the easement. The State does not hold an easement across the Hallo Property.



**Figure 1.**

In 2020, Radford, through his entity Hallo Properties, LLC, purchased the Hallo Property. Radford subsequently informed the State that it was prohibited from using the road running through the Hallo Property to access the western segment (the "Disputed Segment") of easement AE800013. In response, IDL thanked Radford for informing the State of his recent acquisition. It further informed Radford it did not claim to hold an express easement over the Hallo Property, and that IDL would use the eastern portion of AE800013.

In 2021, Radford subsequently filed suit against the State and its lessees (Jay and Dexter Van Orden) on various grounds. Relevant to this appeal, Radford alleged the State breached the "Termination" clause of the agreement, which requires the State to "furnish to [Radford] a statement . . . confirming termination" if it determines that "any segment or portion" of the easement "is no longer needed for the purpose granted[.]" His complaint asserted that "[t]he State ha[d] determined that the [Disputed] [S]egment" of AE800013 "is no longer needed" and, therefore, the State "unreasonably refused to provide a 'statement in recordable form' evidencing the termination [of] the segment . . . ."

The State answered and filed a motion for summary judgment on Radford's various claims. Relevant here, the State argued that Radford's breach of contract claim failed because the State had not determined that the Disputed Segment was no longer needed, nor could it be forced to make that determination under the agreement's plain terms. The State's motion was supported by declarations from three IDL employees who described (1) the creation, purpose, and governing policies of the State's endowment lands; (2) the State's mandates to manage and secure financial returns for the beneficiaries of Idaho's endowment lands under Article 9, sections 7 and 8 of the Idaho Constitution; and (3) the State's long-term plan of connecting various easement segments. The IDL employees also stated that the State had not determined that the Disputed Segment was no longer needed.

In response, Radford argued that the State's subjective conclusion as to whether the Disputed Segment is needed was not "at issue." Rather, in his view, the issue was whether a "reasonable person could conclude that the Disputed Segment is no longer needed for the limited purpose given." Because the State no longer had permission to access the easement by crossing through the Hallo Property, he argued that a reasonable person could infer that the State can no longer use the Disputed Segment of the easement for the limited purpose granted and, therefore, the State breached the agreement by refusing to terminate the Disputed Segment.

The district court granted summary judgment to the State on Radford's breach of contract claim, concluding that the State did not violate any contractual duty by failing to terminate the Disputed Segment following Radford's purchase of the Hallo Property. Thereafter, the district court entered a final partial judgment on Radford's claims against the State under Idaho Rule of Civil Procedure Rule 54(b). Radford timely appealed.

## II. STANDARDS OF REVIEW

"This Court exercises *de novo* review of a grant of summary judgment and the 'standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment.' " *Bronco Elite Arts & Athletics, LLC v. 106 Garden City, LLC*, 172 Idaho 506, 513, 534 P.3d 558, 565 (2023) (quoting *Stonebrook Constr., LLC v. Chase Home Fin., LLC*, 152 Idaho 927, 929, 277 P.3d 374, 376 (2012)). "Summary judgment is proper if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Heath v. Denny's Wrecker Serv., Inc.*, 174 Idaho 942, ___, 560 P.3d 1089, 1101 (2024) (quoting I.R.C.P. 56(a)). When applying this standard, "[a]ll facts and inferences from the

4

record will be viewed in favor of the nonmoving party to determine whether the motion should be granted." *Schriver v. Raptosh*, 174 Idaho 498, ___, 557 P.3d 398, 406 (2024) (quoting *E. Lizard Butte Water Corp. v. Howell*, 122 Idaho 679, 681, 837 P.2d 805, 807 (1992)). "If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercise[s] free review." *Id.* (quoting *Est. of Becker v. Callahan*, 140 Idaho 522, 525, 96 P.3d 623, 626 (2004)).

## III.   ANALYSIS

**A. The district court did not err in granting summary judgment on Radford's breach of contract claim because the State had no contractual duty to assess whether the Disputed Segment was necessary for its granted purposes.**

In concluding that the State had not breached the agreement by failing to terminate the Disputed Segment, the district court explained that "the unambiguous Easement Agreement" "clearly gives the State the sole, and subjective, power to determine whether . . . AE800013 is necessary to the State[,]" and that Radford failed to counter the State's position that it continues to have an interest in the easement and has no plans to terminate the easement. On appeal, Radford contends the district court erred in granting summary judgment on his breach of contract claim for two reasons. First, he maintains that the text of the agreement can reasonably be interpreted to require an objective determination of whether any segment of the easement is no longer needed for the purposes granted. Second, he argues that genuine issues of material fact exist concerning whether the State's refusal to terminate the Disputed Segment of the easement violated the covenant of good faith and fair dealing. For the reasons set forth below, we agree with the district court that the State did not breach the agreement by refusing to terminate the Disputed Segment of AE800013.

Before addressing the district court's interpretation of these provisions, we take note that much like the litigation that came before us previously, "Radford's pleadings and arguments below were a moving target" in this case. *Radford v. Van Orden*, 168 Idaho 287, 305, 483 P.3d 344, 362 (2021). As discussed above, Radford initially took the position in his complaint that the State violated the agreement by failing to terminate the Disputed Segment because he alleged "[t]he State ha[d] determined that the [Disputed] [S]egment" of AE800013 "is no longer needed" and, therefore, the State "unreasonably refused to provide a 'statement in recordable form' evidencing the termination [of] the segment . . . ."

5

Acting on Radford's claim as pleaded, the State moved for summary judgment and submitted evidence that no such determination had been made, and that Radford could not present "even a scintilla of evidence that would prove this claim for breach of contract." In responding to the State's motion, Radford did not proffer any evidence to contradict the State's evidence. Instead, he pivoted to an entirely new breach of contract theory, claiming that the State's subjective belief as to whether the Disputed Segment is needed was not "at issue"; rather, the real issue was "whether a reasonable person could conclude that the Disputed Segment is no longer needed for the limited purpose given." Put differently, when Radford realized that he could not dispute the State's evidence that no such determination had been made, he essentially raised a new breach of contract claim and characterized the State's challenge to his original claim as a strawman attack.

The district court would have been well within the boundaries of its discretion to reject Radford's newly articulated claim and grant the State's motion based on his failure to support his claim as pleaded. *See Litster v. Litster Frost Injury Lawyers PLLC*, 174 Idaho 860, ___, 560 P.3d 1007, 1023 (2024) ("The moving party bears the burden of proving the absence of material facts. Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact." (internal citations and quotation marks omitted)). Even so, the district court analyzed (and rejected) Radford's new breach of contract claim and, therefore, we will likewise address this claim on appeal.

"A breach of contract occurs when there is a failure to perform a contractual duty." *Miller v. Rocking Ranch No. 3 Prop. Owners' Ass'n, Inc.*, 173 Idaho 359, 367, 541 P.3d 1279, 1287 (2024) (quoting *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 361, 93 P.3d 685, 692 (2004)). "If the terms of the contract are clear and unambiguous, the meaning and legal effect of the contract are questions of law which must be determined from the plain meaning of the words used." *Dickinson Frozen Foods, Inc. v. J.R. Simplot Co.*, 164 Idaho 669, 684–85, 434 P.3d 1275, 1290–91 (2019) (quoting *Indep. Lead Mines v. Hecla Mining Co.*, 143 Idaho 22, 26, 137 P.3d 409, 413 (2006)). The parties (and this Court) agree that the text of the agreement is unambiguous.

Section "F" of the agreement sets forth the State's obligations when terminating a segment of the easement:

> If at any time [the State] determines that the Easement Area, or any segment or portion thereof, is no longer needed for the purpose granted, [the State] shall furnish to Grantor a statement in recordable form confirming termination, which may be recorded by either party.

6

The first paragraph of the agreement states that the easement was granted "for the purpose of constructing, reconstructing, using, and maintaining a road and utilities for resource and land management purposes, and as necessary or desirable or common in connection with control, management, use, and administration of State Lands." Then, under the "Limited Purpose" provision of Section B.5, the agreement states that the easement "is specifically limited for ingress and egress" for various land management purposes:

> This easement is specifically limited for ingress and egress for the control, management, administration, and use of [the State's] lands, or resources thereof, for the purposes of, including but not limited to, hauling logs and other forest products, hauling minerals, including sand and gravel, hauling agricultural products, moving livestock to and from [the State's] lands, agriculture uses, all commercial uses and leasing including energy production and transportation, for access for recreation, and fire prevention and control.

As noted above, the district court interpreted this language as granting the State the sole and subjective power to determine whether AE800013 is necessary to the State. On appeal, Radford does not dispute that the agreement identifies the State as the party responsible for deciding whether there is a continued need for the easement. Nor does he claim that the State determined the easement was no longer needed. Instead, he argues the district court erred when it held that the State had sole, and subjective, power to conclude whether the easement is necessary to the State "because the text of the [a]greement can reasonably be interpreted to require an objective determination whether any segment of the easement is no longer needed for the purposes granted." He claims the Termination clause "sets parameters that guide the State's decision[,]" and "directs" that the easement must be "needed for the purposes granted"—i.e., for ingress and egress under the Limited Purpose provision.

Radford's arguments are without merit. Before ever reaching the issue of whether easement necessity is determined through an objective or subjective lens, there must be an obligation on the part of the easement holder to assess its continued necessity. Easements frequently are created with an intent that they exist in perpetuity. "The duration of most servitudes is left indefinite because they are created to implement arrangements whose useful lives cannot be predicted when they are created." Restatement (Third) of Property § 4.3 (2000). "When no definite term is established in the creation of the servitude, its term is indeterminate . . . ." *Id*. However, "[a] servitude may include terms that expressly or by implication limit its duration." *Id*. § 7.1 cmt. a. "If the terms of the servitude include an express expiration date or provide for termination on the occurrence of a

7

condition, the terms will be given effect . . . ." *Id*. § 7.2 cmt. a. "Because the event of defeasance may never happen, however, a defeasible easement may continue perpetually." Jon W. Bruce et al., *The Law of Easements & Licenses in Land* § 10:3 (Feb. 2025 update).

Here, the agreement did not include an express expiration date, and the only event of defeasance is if the State "determines that the Easement Area, or any segment or portion thereof, is no longer needed for the purpose granted[.]" It is undisputed that this event has not occurred, and nothing in the agreement imputes a contractual obligation on the State to periodically reassess the continued necessity of the Disputed Segment. Rather, the language of the Termination clause merely contemplates the possibility that the State may elect to forfeit a segment (or the entirety) of the easement in the future and imputes a duty on the State to confirm its termination decision in recordable form in the event it makes that determination. However, the mere possibility that the State could elect to terminate a segment of the easement does not suggest any duty to make that decision. In essence, Radford seeks to rewrite this clause so that the State's present inability to access AE800013 through the Hallo Property results in an automatic termination of the easement. However, the Termination clause does not state that "the easement shall cease and terminate when it is not presently needed for the purpose granted."

Radford contends that accepting the district court's interpretation renders "the language setting parameters for the State's decision and the mandatory language conferring a benefit on Radford . . . mere surplusage without any legally operative effect." We disagree. As discussed above, the agreement obligates the State "to furnish to [Radford] a statement in recordable form confirming termination" if the event of defeasance occurs—i.e., if the State determines that a segment is no longer needed for the purpose granted at some point in the future. Therefore, the language is not "surplusage" because it establishes a possible event of defeasance and, in that event, obligates the State to confirm the easement's termination in recordable form.

Next, Radford also claims that the State's refusal to terminate the Disputed Segment constituted a breach of the covenant of good faith and fair dealing. He argues that, when analyzed through the lens of the implied covenant of good faith and fair dealing the phrase "no longer needed for the purpose granted" necessarily imposes limits on the scope of the State's discretion to determine the continued necessity of the easement. In his view, the State was "bound" to conclude that the easement is "no longer needed for the purpose granted" because the State cannot presently

8

use the easement for ingress or egress following Radford's purchase of the Hallo Property, and the State's failure to do so violated its contractual obligations.

"The implied covenant of good faith and fair dealing is a covenant implied by law in the parties' contract." *Shawver*, 140 Idaho at 362, 93 P.3d at 693 (quoting *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 750, 9 P.3d 1204, 1216 (2000)). "The covenant requires that the parties perform, in good faith, the obligations imposed by their agreement, and a violation of the covenant occurs only when either party violates, nullifies or significantly impairs any benefit of the contract." *Id.* (citing *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 288, 824 P.2d 841, 863 (1991)). However, "[n]o covenant will be implied which is contrary to the terms of the contract negotiated and executed by the parties." *Thurston Enters., Inc. v. Safeguard Bus. Sys., Inc.*, 164 Idaho 709, 722–23, 435 P.3d 489, 502–03 (2019) (quoting *Idaho Nat'l Bank*, 121 Idaho at 288, 824 P.2d at 863). Here, Radford's argument is unavailing because it presupposes the State had an obligation to assess the easement's continued necessity. As set forth above, the agreement imposes no such obligation and, because it is undisputed that the event of defeasance never occurred, Radford cannot establish the State violated, nullified or impaired any benefit under the agreement by failing to terminate the Disputed Segment.

For the forgoing reasons, we conclude the State had no contractual duty to assess whether the Disputed Segment was necessary for its granted purposes under the agreement's plain language. And because it is undisputed that the event of defeasance never occurred, Radford cannot establish the State breached any contractual duty or the implied covenant of good faith and fair dealing. Accordingly, we affirm the decision of the district court. Based on this ruling, we do not need to address the additional issue raised in Radford's appeal as to whether the district court erred by considering parol evidence when interpreting the agreement, or Radford's alternative argument that the agreement is ambiguous.

## B. The State is entitled to attorney fees on appeal.

The State requests that it be awarded attorney fees on appeal pursuant to Idaho Code sections 12-117 and 12-121. The standard for awarding attorney fees under either statute is substantially the same; both "permit the award of attorney's fees to the prevailing party if the court determines the case was brought, pursued or defended frivolously, unreasonably or without foundation." *Galvin v. City of Middleton*, 164 Idaho 642, 647, 434 P.3d 817, 822 (2019) (citation omitted), *overruled on other grounds by Millard v. Talburt*, 173 Idaho 533, 544 P.3d 748 (2024).

9

The State is clearly the prevailing party on appeal. Our review of the record also convinces us that this appeal was unreasonably pursued. Put simply, Radford's arguments rested on a fundamental misreading of easement law, which needlessly prolonged this litigation. As set forth above, it is undisputed that the event of defeasance never occurred in this case. And Radford's arguments were predicated on the false assumption that the State was required to assess the continued necessity of the easement, despite no language in the agreement requiring the same. Therefore, the State is entitled to an award of attorney fees incurred in this appeal under either statute.

## IV. CONCLUSION

We affirm the partial judgment of the district court and award attorney fees and costs on appeal to the State.


Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.